UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

BRANDEN PETERSON,

Defendant.

**MEMORANDUM & ORDER**
23-CV-08322 (HG)
18-CR-609-HG-8

**HECTOR GONZALEZ**, United States District Judge:

Petitioner Branden Peterson pled guilty to one count of murder-for-hire conspiracy in violation of 18 U.S.C. § 1958(a) and was sentenced on December 8, 2022, to 192 months' imprisonment followed by three years of supervised released.  ECF No. 608 (Sent'g Tr.) at 39:3–6.[1]  Petitioner, proceeding *pro se*, now moves to vacate his sentence pursuant to 28 U.S.C. § 2255 ("Section 2255") on the grounds of ineffective assistance of counsel.  *See* ECF No. 695 (Pet.).  Petitioner also requests an evidentiary hearing regarding the merits of his claim.  *Id.* at 18.  The government opposes the petition.  *See* ECF No. 703 (Gov't's Opp'n).  For the reasons discussed below, the Section 2255 petition and Petitioner's demand for an evidentiary hearing are both DENIED.

## BACKGROUND

The Court assumes familiarity with the facts underlying Petitioner's conviction. Petitioner was charged with participating in a murder-for-hire conspiracy and related firearms crimes.  Plea Agreement ¶ 5.  On March 9, 2022, Petitioner pled guilty to Count One (the murder

---

[1] The Court refers to the pages assigned by the Electronic Case Files system ("ECF"), except when quoting transcripts, where the Court refers to the page number on the native document.  Unless otherwise indicated, when quoting cases, the parties' papers, and transcripts, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

conspiracy) pursuant to a plea agreement with the government. *See* ECF No. 354 (Plea Tr.). When he signed the plea agreement, Petitioner stipulated that the Sentencing Guidelines range was 324 to 405 months with a statutory maximum of 240 months' imprisonment. Plea Agreement ¶ 2. At the plea hearing, Petitioner confirmed that he had discussed the case and the consequences of pleading guilty with his attorneys, and that he was satisfied with their representation of him. Plea Tr. at 6:5–19. Petitioner stated that he was pleading guilty of his own free will, *id.* at 17:6–24, and that he understood that his guilty plea exposed him to a maximum 20-year sentence, *id.* at 15:4–10. In his allocution, Petitioner admitted that he had "agreed to join with others in a plan to carry out a murder for hire for some money" and that he "did so knowing it was wrong." *Id*. at 18:10–19. Judge Dearie asked Petitioner if he understood that his plea agreement "contains an agreement not to file an appeal or otherwise challenge the conviction [or] sentence," to which Petitioner answered in the affirmative. *Id.* at 16:15–22.

Petitioner was sentenced by Judge Dearie on December 8, 2022. *See id*. Petitioner confirmed before he was sentenced that he had read the presentence report, discussed it with his lawyer, and had no objections to its contents. Sent'g Tr. at 2:18–3:3. After considering the parties' sentencing submissions, Judge Dearie sentenced Petitioner to 192 months' imprisonment followed by three years of supervised release, a sentence that was well below the stipulated Guidelines range. *Id.* at 39:3–6. On November 7, 2023, Petitioner filed this Section 2255 petition. On December 8, 2023, the government filed its opposition.

## LEGAL STANDARDS

### A. Section 2255

A prisoner in federal custody may move to vacate, set aside, or correct his sentence only "upon the ground that the sentence was imposed in violation of the Constitution or laws of the

United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010). To prevail on a collateral attack of a final judgment under Section 2255, a petitioner must demonstrate either the existence of a "constitutional error . . . or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995); *accord Rodriguez v. United States*, No. 11-cv-2957, 2013 WL 6171618, at *3 (S.D.N.Y. Nov. 25, 2013), *aff'd*, 679 F. App'x 41 (2d Cir. 2017). When a petitioner brings a Section 2255 petition *pro se*, the Court must construe the submission liberally and interpret it to "raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

In ruling on a Section 2255 petition, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Moreover, a hearing is not required where the petitioner's allegations are "vague, conclusory, or palpably incredible." *Machibroda v. United States*, 368 U.S. 487, 495 (1962). To justify a hearing, the petition "must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the petitioner] to relief." *Gonzalez v. United States*, 722 F.3d 118, 131 (2d Cir. 2013).

### B. *Ineffective Assistance of Counsel*

The Sixth Amendment of the United States Constitution provides that a criminal defendant has the right to effective assistance of counsel. *See Bobby v. Van Hook*, 558 U.S. 4, 7 (2009). A claim for ineffective assistance of counsel is analyzed under the two-part test set out by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). To be entitled to relief, a petitioner must show that: (1) his attorneys' conduct was constitutionally deficient because it fell below an "objective standard of reasonableness," *id.* at 687–88, and (2) the petitioner was prejudiced by the ineffective representation—that is, but for the deficiency, there is a reasonable probability that "the result of the proceeding would have been different," *id.* at 694.

To determine whether counsel's conduct is deficient under the first prong, "the court must determine whether, in light of all of the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Lindstadt v. Keane*, 239 F.3d 191, 198–99 (2d Cir. 2001). A petitioner cannot meet this prong based solely on disagreements with counsel's strategy or advice. Indeed, there is a "strong presumption" that counsel's conduct fell within the vast spectrum of reasonable assistance, and it is the petitioner's burden to demonstrate "that counsel's representation was unreasonable under prevailing norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *see also Dunn v. Reeves*, 594 U.S. 731, 739 (2021) ("[W]e have often explained that strategic decisions . . . are entitled to a strong presumption of reasonableness [since] [d]efense lawyers have limited time and resources, and so must choose from among countless strategic options."); *Henderson v. Martuscello*, No. 10-cv-5135, 2013 WL 6463348, at *15 (S.D.N.Y. Dec. 10, 2013) ("Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable, even where counsel adopts a course of action (or inaction)

4

that seems risky, unorthodox[,] or downright ill-advised."). Thus, to satisfy this prong, a petitioner must demonstrate that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687. In assessing counsel's conduct, "a reviewing court must judge [their] conduct on the basis of the facts of the particular case, viewed as of the time of counsel's conduct, and may not use hindsight to second-guess his strategy choices." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).

To satisfy the second *Strickland* prong, "[the petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding below would have been different." *United States v. Caracappa*, 614 F.3d 30, 46 (2d Cir. 2010). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding," as "[v]irtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* at 693. Moreover, "[p]urely speculative arguments about the impact of an error do not establish prejudice." *DeCarlo v. United States*, No. 11-cv-2175, 2013 WL 1700921, at *4 (S.D.N.Y. Apr. 17, 2013). Finally, the Supreme Court has instructed that "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the [petitioner] makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

## **DISCUSSION**

### I.     **Petitioner Did Not Waive an Ineffective Assistance Claim in His Plea Agreement**

Petitioner did not waive his right to file this Section 2255 petition when he entered into his plea agreement. Petitioner entered into an agreement with the government, stipulating that the Guidelines sentence range was 324 to 405 months with a statutory maximum of 240 months' imprisonment. Plea Agreement ¶ 2. Paragraph four of the plea agreement stated that Petitioner waived his right to appeal or "otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment of 240 months or below." *Id.* ¶ 4. Petitioner acknowledged that he understood the consequences of pleading guilty, including the applicable Guideline ranges and his waiver of the right to appeal. *See* Plea Tr. at 9:1–9. "Waivers of the right to appeal a sentence are presumptively enforceable." *United States v. Arevalo*, 628 F.3d 93, 98 (2d Cir. 2010). However, an exception was carved out of the waiver in Petitioner's plea agreement for an ineffective assistance of counsel challenge. *See* Plea Agreement ¶ 4 ("Nothing in the foregoing waiver of appellate and collateral review rights shall preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum."). Therefore, the Court proceeds to the merits of Petitioner's ineffective assistance of counsel claims. *See generally United States v. Pineda*, No. 18-cr-302, 2023 WL 6283247 (E.D.N.Y. Sept. 26, 2023) (considering the merits of the petitioner's ineffective assistance of counsel claim where waiver in plea agreement had the

same language); *United States v. Lombardo*, No. 17-cr-318, 2021 WL 6136177, at *2 (E.D.N.Y. Dec. 29, 2021) (same).

**II.      Petitioner's Counsel Was Not Ineffective**

Petitioner raises three theories of ineffective assistance of counsel: (1) counsel failed to investigate Petitioner's involvement in the conspiracy; (2) counsel failed to object to video evidence used to tie Petitioner to the conspiracy; (3) counsel's conduct was unreasonable in advising Petitioner to agree to forfeit $8,000. Pet. at 4–6. The Court addresses each theory in turn.

       *A.      Failure to Investigate*

Petitioner first contends that his attorneys did not investigate the meaning of the text messages exchanged between him and his co-defendants and maintains that these messages were unrelated to the murder conspiracy. Pet. at 14. "To successfully assert an ineffective assistance of counsel claim based on a failure to investigate, a petitioner must do more than make vague, conclusory, or speculative claims as to what evidence could have been produced by further investigation." *Sheehan v. United States*, No. 13-cr-186, 2018 WL 1796548, at *4 (E.D.N.Y. Apr. 16, 2018). Here, as the government points out, *see* Gov't's Opp'n at 29, aside from Petitioner's conclusory claim that his attorneys failed to investigate the "real" meaning of the text messages, he offers no explanation identifying which specific messages he means, what he intended by them, or what actions his attorneys could have taken to establish this alleged meaning. Furthermore, it is unclear how further investigation into the text messages would have impacted the validity of Petitioner's plea, considering his multiple admissions of guilt. *See* Plea Tr. at 18:9–19 ("I'm pleading guilty because I am guilty."); Sent'g Tr. at 34:23–35:10. In the absence of any specifics, he does not overcome the presumption that counsel acted reasonably.

7

*See Castellano v. United States*, 795 F. Supp. 2d 272, 279 (S.D.N.Y. 2011) (rejecting ineffective assistance claim where petitioner failed to identify alternative evidence that, if offered, "would have undermined confidence in the jury verdict"); *Abraham v. Lee*, No. 13-cv-2525, 2014 WL 3630876, at *11 (S.D.N.Y. July 22, 2014) (rejecting ineffective assistance claim as vague and conclusory where petitioner's claim for failure to investigate was "only a blanket assertion").

### B.     Failure to Object to Video

Petitioner next asserts that his counsel was ineffective for failing to argue that the video footage of a September 2017 assault on the murder victim did not prove "beyond a reasonable doubt" that he was the individual depicted, nor did it establish a connection between him and the murder conspiracy.  Pet. at 15.  First, it is again unclear how counsel's arguments regarding the assault at sentencing would have impacted the validity of Petitioner's plea.  And to the extent Petitioner argues that it was improper for Judge Dearie to consider the assault during sentencing, a "sentencing court's discretion is largely unlimited either as to the kind of information it may consider, or the source from which it may come." *United States v. Chen Chung*, 738 F. App'x 702, 705 (2d Cir. 2017).  Second, Counsel's performance was not deficient because, as the government points out, Gov't's Opp'n at 31, Petitioner admitted at least twice that he assaulted the murder victim on video.  *See* Sent'g Tr. at 34:23–24 ("I accept responsibility for the assault."); *see also* ECF No. 532 at 27 (Def.'s Sent'g Mem.) ("I am embarrassed and ashamed to say that I assaulted [the murder victim]."). In light of these admissions and additional evidence linking Petitioner to the assault, counsel could not have plausibly argued that Petitioner did not commit the September 2017 assault.  Furthermore, contrary to Petitioner's suggestion, while acknowledging Petitioner's minor role in the broader murder-for-hire conspiracy, the government proffers much more evidence than just the video of the September 2017 assault to

8

link Petitioner to the conspiracy. The additional evidence included: Petitioner's DNA on a mask found in a van used during the November 2017 attempted murder while the intended victim was driving; cell site data placing Petitioner's phone near the scene at the time; and text messages between Petitioner and a co-conspirator discussing the broader murder conspiracy. Sent'g Tr. at 18:12–23, ECF No. 543 at 3–11 (Gov't's Sent'g Mem.); Gov't's Opp'n at 8–17. Notwithstanding this additional evidence, Petitioner's counsel, both in the sentencing submission and at the sentencing hearing, nevertheless vigorously argued that Petitioner's role in the conspiracy was limited. Sent'g Tr. at 7:9–8:16; ECF No. 532 at 16–17. To be sure, "when reviewing decisions by counsel, [courts] are instructed not to second-guess reasonable professional judgments and impose on counsel a duty to raise every colorable claim." *Acevedo v. Capra*, 600 F. App'x 801, 803 (2d Cir. 2015). Even so, Petitioner's counsel submitted a comprehensive 25-page, single-spaced sentencing memorandum, accompanied by 25 pages of supporting letters, in which they thoroughly argued that Petitioner's role in the offense was limited and that his personal characteristics warranted a time-served sentence. *See* ECF No. 532. Accordingly, Petitioner's claim falls well short on the first *Strickland* prong.

### C. Failure to Object to Forfeiture

Finally, Petitioner argues that his counsel was ineffective by failing to challenge the basis for the agreed-upon forfeiture judgment of $8,000 in his plea agreement. Pet. at 17. The Second Circuit has held that a Section 2255 motion "may not attack the non-custodial aspects of a sentence," but has "not as yet foreclosed the possibility that a restitution order might entail a sufficiently severe restraint on liberty, not shared by the public at large, as to amount to a form of custody." *Gonzalez v. United States*, 792 F.3d 232, 237 (2d Cir. 2015). Here, the Court joins a myriad of other courts in this Circuit in holding that "a habeas petition cannot be used as a

vehicle to challenge non-custodial components of a criminal sentence, such as restitution or forfeiture." *See United States v. Munson*, No. 06-cr-143, 2019 WL 188493, at *2 (S.D.N.Y. Jan. 14, 2019) (finding that a habeas petition could not be used to challenge a $46,200,000 forfeiture order); *accord United States v. Rutigliano*, 887 F.3d 98, 107 (2d Cir. 2018); *Kaminski v. United States*, 339 F.3d 84, 87 (2d Cir. 2003); *Jereis v. United States*, No. 10-cr-007, 2018 WL 11220221, at *5 (S.D.N.Y. July 20, 2018); *Nigro v. United States*, No. 09-cr-1239, 2016 WL 3211968, at *9 (S.D.N.Y. June 9, 2016); *Mansour v. United States*, No. 11-cr-612, 2015 WL 1573327, at *4 (S.D.N.Y. Apr. 9, 2015). Therefore, Petitioner's challenge to the forfeiture order is not cognizable under Section 2255, and even if the Court were to consider the forfeiture order in the context of Petitioner's ineffective assistance claim, Petitioner has not shown that his attorneys were deficient in any way.

    D. *Petitioner Fails to Show Prejudice Resulting from Any Alleged Error*

Even assuming Petitioner established that his counsel's performance was deficient, which he has not, he nonetheless fails to satisfy the second prong of the *Strickland* test: he has not demonstrated that he suffered any prejudice as a result of counsel's conduct. *See Strickland,* 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."). For a petitioner who enters a plea agreement to satisfy the prejudice prong of the *Strickland* test, the Petitioner "must show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Premo v. Moore*, 562 U.S. 115, 131–32 (2011). Additionally, "[P]etitioner would have to show that he would have been acquitted or at least received a shorter sentence after conviction." *Moore v. United States*, No. 16-cr-167, 2022 WL 2306910, at *3 (S.D.N.Y. June 27, 2022). Petitioner does not make either of those

assertions, let alone show a "reasonable probability" of satisfying them. To the contrary, "the strength of this evidence, as well as Petitioner's [clear] acknowledge[ment of] guilt, weighs against a finding of prejudice." *Contant v. Sabol*, 987 F. Supp. 2d 323, 356 (S.D.N.Y. 2013). Furthermore, as the government notes, had Petitioner gone to trial, "he faced a sentence of mandatory life imprisonment on the murder-for-hire and murder-for-hire conspiracy, in addition to life sentences on the related firearm counts." Gov't's Opp'n at 34. Given the evidence against him and the substantial benefit he received from pleading guilty, Petitioner cannot show a reasonable probability that, but for counsel's alleged errors, he would have gone to trial and received a shorter sentence.

Since all of Petitioner's claims are dismissed because they lack merit, and Petitioner has made no showing that an evidentiary hearing could affect the disposition of any of his claims, his request for an evidentiary hearing is denied. *See Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001*)* (a district court has discretion to rely on documentary evidence in deciding habeas petitions, and need not conduct a "full-blown testimonial hearing" when in-court testimony "would not offer any reasonable chance of altering [the court's] view of the facts"); *accord Castillo v. United States*, No. 19-cr-428, 2023 WL 6622071, at *8 (S.D.N.Y. Oct. 11, 2023); *Eley v. Ercole,* No. 08-cv-917, 2010 WL 2695522, at *8 (E.D.N.Y. May 6, 2010).

## CONCLUSION

For the foregoing reasons, the petition and request for an evidentiary hearing are DENIED. The Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. *See Matthews v. United States*, 682 F.3d 180, 185 (2d Cir. 2012). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and permission to proceed *in forma pauperis* is

therefore denied. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The Clerk of Court is respectfully directed to close the parallel civil case at No. 23-cv-08322 and to mail a copy of this order to *pro se* Petitioner.

SO ORDERED.

                                                */s/ Hector Gonzalez*
                                                  HECTOR GONZALEZ
                                                  United States District Judge

Dated: Brooklyn, New York
        June 19, 2025